# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| UNITED STATES OF AMERICA | * |
|---|---|
| | * |
| | * Case No. 17-po-5873 |
| v. | * |
| | * |
| | * |
| SANJI AKONGMBOM, | * |
| | * |
| | * |
| Defendant | * |

## MEMORANDUM OPINION AND ORDER OF COURT

This matter is before the Court on Defendant's motion for judgment of acquittal under Fed. R. Crim. P. 29. For the reasons discussed below, Defendant's motion is **DENIED**.

## BACKGROUND

At Defendant's bench trial on October 23, 2017, United States Park Police ("USPP") Officer Robert Usher testified that his patrol assignment on the Baltimore-Washington Parkway includes patrolling Powder Mill Road. Officer Usher further testified that, while patrolling Powder Mill Road through the Beltsville Agricultural Research Center (the "BARC") at about 1:00 a.m. on May 14, 2017, he observed Defendant's white Mercedes SUV parked off the road, in a driveway to a gated entrance to an area within the BARC. Officer Usher approached the vehicle on foot and observed Defendant asleep in the driver's seat. The vehicle's engine was not running, and the ignition key was on the driver's lap. The officer relayed the vehicle's registration to dispatch and then knocked several times on the driver's window to get Defendant's attention. Defendant did not respond, so the officer opened the driver's unlocked door in order to awaken him. Upon awakening, Defendant appeared startled and began to grab

the steering wheel and the shift in the center console as if to drive away. Officer Usher detected the odor of an alcoholic beverage emanating from Defendant, so the officer asked Defendant to exit the vehicle so he could conduct field sobriety tests to determine whether Defendant was impaired. Officer Usher administered a horizontal-gaze nystagmus ("HGN") test[1] and arrested Defendant for operating or being in actual physical control of a motor vehicle while under the influence of alcohol ("DUI"). Before arresting Defendant, Officer Usher administered a roadside test of Defendant's breath, but the officer conducted no other field sobriety tests.

After Defendant was arrested, he was transported to the police station for processing. The desk processing officer, Officer Gerald Ferreyra, testified at trial that he processed Defendant at the station, and generated a printout obtained from the station's computer system of Defendant's Maryland driver's license status (Gov't Ex. 2, which the Government withdrew). *See* Md. Code Ann., Transp. § 12-113(b)(2). Although he was not certified to do so at the time, Officer Ferreyra administered an alcohol test of Defendant's breath. The officer also conducted an HGN test. During the observation period Officer Ferreyra detected the odor of alcohol from Defendant's breath and observed that his eyes were bloodshot and watery. On the basis of Officer Ferreyra's observations and the results of the HGN test, he opined that Defendant was intoxicated. Defendant ultimately was charged with (1) driving without a driver's license, in violation of Md. Code Ann., Transp. § 16-101(a), as incorporated by 36 C.F.R. § 4.2(a) (violation number 7213719); (2) DUI with an alcohol concentration of 0.08 or more, in violation of 36 C.F.R. § 4.23(a)(2) (violation number 7213720); (3) DUI, in violation of 36 C.F.R.

---

[1] "An HGN test involves having a person follow a stimulus, such as a pen, with his or her eyes to observe if the subject's eyes involuntarily jerk. Involuntary eye movements suggest that the subject is intoxicated." *United States v. Wilson*, No. 17-6466, 2017 WL 5899948, at *1 (4th Cir. Nov. 28, 2017) (per curiam) (unpublished).

§ 4.23(a)(1) (violation number 7213722); and (4) parking on a park roadway, in violation of 36 C.F.R. § 4.12 (violation number 7213723).

At trial, over Defendant's objection, the Government introduced under Fed. R. Evid. 803(6) and 902 Defendant's certified driving record from the Maryland Motor Vehicle Administration ("MVA") dated July 19, 2017, showing that Defendant had a valid Maryland license as of May 24, 2017 (Gov't Ex. 1). The Government dismissed Defendant's citations for parking on a park roadway, in violation of 36 C.F.R. § 4.12, and for DUI, in violation of 36 C.F.R. § 4.23(a)(2). Defendant moved for judgment of acquittal on the remaining charges, contending that the USPP lacked jurisdiction on the BARC; that he did not have actual physical control of his motor vehicle; that the Government failed to produce sufficient evidence to prove beyond a reasonable doubt that he did not possess a Maryland driver's license on May 14, 2017; and that the violation notices are insufficient to place him on notice of the pending charges because they do not properly allege jurisdiction, are vague, and do not properly describe the charged offenses. The Court took Defendant's motion under advisement.

## DISCUSSION

### A.  USPP Jurisdiction

Defendant first contends that the USPP does not have jurisdiction to police the BARC. The regulations in 36 C.F.R. Chapter I, Part 4, which relate to vehicles and traffic safety, apply to, among other things, "[l]ands and waters in the environs of the District of Columbia, policed with the approval or concurrence of the head of the agency having jurisdiction or control over such reservations." 36 C.F.R. § 1.2(a)(4); *see id.* § 4.1 ("The applicability of the regulations in this part [relating to vehicles and traffic safety] is described in § 1.2 of this chapter."). "Other Federal reservations in the environs of the District of Columbia" means

3

> Federal areas, which are not under the administrative jurisdiction of the National Park Service, located in Arlington, Fairfax, Loudoun, Prince William, and Stafford Counties and the City of Alexandria in Virginia and Prince Georges [sic], Charles, Anne Arundel, and Montgomery Counties in Maryland, exclusive of military reservations, unless the policing of military reservations by the U.S. Park Police is specifically requested by the Secretary of Defense or a designee thereof.

*Id.* § 1.4(a); *see* D.C. Code Ann. § 5-208 (West 2001) (defining "the environs of the District of Columbia" for purposes of USPP's authority to make arrests and execute warrants on federal reservations "as embracing Arlington, Fairfax, Loudoun, Prince William, and Stafford Counties and the City of Alexandria in Virginia, and Prince George's, Charles, Anne Arundel, and Montgomery Counties in Maryland").

Here, the Court takes judicial notice under Fed. R. Evid. 201(b) that the BARC is in Beltsville, Maryland, which is in Prince George's County, as "geographical information is especially appropriate for judicial notice." *United States v. Johnson*, 726 F.2d 1018, 1021 (4th Cir. 1984); *see United States v. Piggie*, 622 F.2d 486, 488 (10th Cir. 1980) (noting that "[g]eography has long been peculiarly susceptible to judicial notice for the obvious reason that geographic locations are facts which are not generally controversial and thus it is within the general definition contained in Fed. R. Evid. 201(b)"). The BARC thus is within "the environs of the District of Columbia" as defined in 36 C.F.R. § 1.4(a) and D.C. Code Ann. § 5-208. Further, the BARC is within the special maritime and territorial jurisdiction of the United States and under the administrative jurisdiction of the Department of Agriculture, not the National Park Service. *See United States v. McClure*, 241 F. App'x 105, 106 (4th Cir. 2007) (per curiam); 7 C.F.R. § 502.1. The USPP thus has the authority under 36 C.F.R. §§ 1.2(a)(4) and 4.1 and D.C.

Code Ann. § 5-206 to police, with the approval of the Secretary of Agriculture, DUI offenses occurring at the BARC as violations of either 36 C.F.R. § 4.23 or 7 C.F.R. § 502.8.[2]

Defendant maintains that, assuming that his arrest occurred on BARC property, the only correct regulation under which the Government may charge him is 7 C.F.R. § 502.8 and not 36 C.F.R. § 4.23. The "savings clause" or "non-abrogation clause" of 7 C.F.R. § 502.16 provides, however, that "[n]othing contained in the rules and regulations in this part [relating to conduct at the BARC] shall be construed as abrogating or authorizing the abrogation of any other regulations or any Federal law or any laws and regulations of the State of Maryland." Moreover, "the prosecutor's normal power to choose between available charges controls." *United States v. Maes*, 546 F.3d 1066, 1070 (9th Cir. 2008) (holding that defendant was permissibly charged and sentenced under 21 U.S.C. § 844(a) rather than under 38 C.F.R. § 1.218(a)(7) for possession of controlled substance on VA property). Because the Government may charge Defendant under 36 C.F.R. § 4.23 for DUI on BARC property pursuant to 36 C.F.R. §§ 1.2(a)(4) and 4.1, his argument to the contrary is unavailing.

---

[2] Title 7 C.F.R. § 502.8 prohibits

> [e]ntering BARC property or the operation of a motor vehicle thereon, by a person under the influence of intoxicating beverages or narcotic drug, hallucinogen, marihuana, barbiturate, or amphetamine (unless prescribed by a physician) or the consumption of such beverages, or the use of any such drug or substance in or on BARC property.

7 C.F.R. § 502.8. Title 36 C.F.R. § 4.23 prohibits operating or being in actual physical control of a motor vehicle while "[u]nder the influence of alcohol, or a drug, or drugs, or any combination thereof, to a degree that renders the operator incapable of safe operation" or while the "alcohol concentration in the operator's blood or breath is 0.08 grams or more of alcohol per 100 milliliters of blood or 0.08 grams or more of alcohol per 210 liters of breath." 36 C.F.R. § 4.23(a). A violation of 7 C.F.R. § 502.8 can result in a "fine of not more than $50 or imprisonment of not more than 30 days, or both." 7 C.F.R. § 502.16. A violation of 36 C.F.R. § 4.23, on the other hand, can result in a maximum penalty of six months' imprisonment and a $5,000 fine; alternatively, the Court may impose a term of probation not to exceed five years. *United States v. Nachtigal*, 507 U.S. 1, 2 (1993) (per curiam).

Defendant further seeks acquittal because the Government presented no evidence of the Secretary of Agriculture's approval of the USPP's police powers at the BARC. The Court, however, may take judicial notice under Fed. R. Evid. 201(b) that the USPP has exclusive jurisdiction at the BARC because this fact is "not subject to reasonable dispute," as it "is generally known within the trial court's territorial jurisdiction" and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See* 2 Prince George's County Police Dep't, *General Order Manual* ch. 13, at 10-11, https://www.princegeorgescountymd.gov/DocumentCenter/Home/View/16571 (noting that USPP has exclusive jurisdiction in the BARC and that Prince George's County Police Department officers serve as "special police officers" when assisting USPP under what is now 54 U.S.C. § 102701(b)); https://www.nps.gov/subjects/uspp/district-4.htm (noting that USPP's Greenbelt Park Station provides police services to federal reservations in Prince George's County, including the Agricultural Research Center); *see also United States v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017) (noting that courts routinely take judicial notice of information contained on state and federal government websites); *United States v. Robinson*, 670 F. App'x 144, 145 (4th Cir. 2016) (per curiam) (holding that magistrate judge did not abuse discretion in relying on officer's testimony to take judicial notice that USPP is authorized to perform law enforcement functions on land owned by United States Fish and Wildlife Service); *Driebel v. City of Milwaukee*, 298 F.3d 622, 630-31 n.2 (7th Cir. 2002) (taking judicial notice of Milwaukee Police Department's Manual of Rules and Regulations containing rules and regulations promulgated by chief of police, approved by city council, and published for use in normal course of business by police department). The Court also credits Officer Usher's

testimony that the area of Powder Mill Road where these alleged offenses occurred is on BARC property. For these reasons, Defendant's jurisdictional arguments fail.[3]

**B.       Driving Without a Driver's License**

Defendant further asserts that the Government failed to produce sufficient evidence to prove beyond a reasonable doubt that he had no Maryland driver's license at the time of his arrest, in violation of Md. Code Ann., Transp. § 16-101(a).[4] In this case, to obtain a conviction under section 16-101, the Government need only prove beyond a reasonable doubt that Defendant did not have a Maryland driver's license at the time of his arrest. *See Smith v. State*, 40 A.3d 428, 429 (Md. 2012). Defendant seeks acquittal of this charge because he argues that the record only shows that he obtained a new Maryland driver's license on May 24, 2017, but does not show that he did not have a Maryland driver's license before that date. His argument is unavailing, as Government's Exhibit 1 shows that that the MVA issued a new, "limited term temporary" Maryland driver's license to Defendant on May 24, 2017, but does not show that he

---

[3] Although the Court finds that it may appropriately take judicial notice of the USPP's investigative jurisdiction in the BARC, judges are not ferrets. *Nicholas Acoustics & Specialty Co. v. H & M Constr. Co.*, 695 F.2d 839, 847 (5th Cir. 1983). In future cases involving USPP arrests outside park areas but on federal reservations in the environs of the District of Columbia, the Government should produce evidence of the agency approval that confers USPP jurisdiction under 36 C.F.R. § 1.2(a)(4).

[4] At the time of Defendant's arrest, section 16-101(a) provided:

> An individual may not drive or attempt to drive a motor vehicle on any highway in this State unless:
>
> (1) The individual holds a driver's license issued under this title;
>
> (2) The individual is expressly exempt from the licensing requirements of this title; or
>
> (3) The individual otherwise is specifically authorized by this title to drive vehicles of the class that the individual is driving or attempting to drive.

7

had a valid Maryland's driver's license before that date.[5] The Court accordingly finds that the Government has produced sufficient evidence to prove beyond a reasonable doubt that Defendant did not have a valid Maryland driver's license before May 24, 2017. The Court thus **DENIES** Defendant's motion for judgment of acquittal of the charge of driving without a driver's license, in violation of Md. Code Ann., Transp. § 16-101(a) (violation number 7213719).[6]

C.     **Sufficiency of Charging Documents**

Defendant next contends that he should be acquitted of the charges of general DUI and driving without a license because the citations are insufficient to place him on notice of the nature of the charge, in violation of Fed. R. Crim. P. 7(c). "For petty offenses committed on federal enclaves, a 'violation notice is the functional equivalent of an indictment or an information.'" *United States v. Johnson*, 131 F. Supp. 2d 721, 723 (D. Md. 2001) (quoting *United States v. Moore*, 586 F.2d 1029, 1031 (4th Cir. 1978)). Rule 7(c)(1) provides:

> The indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government. It need not contain a formal introduction or conclusion. A count may incorporate by reference an allegation made in another count. A count may allege that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means. For each count, the indictment or information must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated.

---

[5] "In accordance with Maryland Vehicle Law, an applicant for a license or identification card with verifiable proof of temporary lawful status in the U.S. may be issued a limited term license or identification card." Md. Code Regs. 11.17.09.03(C).

[6] The exceptions to the license requirement set forth in former subsections (2) and (3) of section 16-101(a) are affirmative defenses to be raised by Defendant. *Smith*, 40 A.3d at 435; *see* Md. Code Ann., Transp. § 16-102. Defendant has not produced any evidence that he fell within any of these exceptions on May 14, 2017.

8

However, "[u]nless the defendant was misled and thereby prejudiced, neither an error in a citation nor a citation's omission is a ground to dismiss the indictment or information or to reverse a conviction." Fed. R. Crim. P. 7(c)(2). Moreover,

> [a] conviction may be sustained on the basis of a statute or regulation other than that cited. The provision of the rule, in view of the many statutes and regulations, is for the benefit of the defendant and is not intended to cause a dismissal of the indictment, but simply to provide a means by which he can be properly informed without danger to the prosecution.

Fed. R. Crim. P. 7(c) note 3 (citations omitted).

Here, despite Defendant's objections to Officer Usher's written description on the citations of the alleged offenses, each citation cites the statute or regulation that Defendant allegedly violated. Further, as noted above, the USPP has investigative jurisdiction over the portion of Powder Mill Road through the BARC where the alleged offenses occurred. The Court thus finds that Defendant was not prejudiced by any errors or omissions in the citations because they were not misleading. Because Defendant was properly informed of the offenses charged and his substantial rights were not prejudiced, his argument in this regard is without merit.

D.  **Defendant's Actual Physical Control of Vehicle**

Defendant finally contends that he was not in actual physical control of his vehicle to be charged under 36 C.F.R. § 4.23 because he was asleep in the driver's seat while the ignition key was on his lap. However, an "operator" of a motor vehicle is defined as "a person who operates, drives, controls, otherwise has charge of or is in actual physical control of a mechanical mode of transportation or any other mechanical equipment." 36 C.F.R. § 1.4(a). Thus, "[t]he definition of operator encompasses a broader range of behavior than just driving." *United States v. Griffin*, 400 F. App'x 783, 785 (4th Cir. 2010) (per curiam). Section 4.23(a)(1) "prohibits not only operation of a motor vehicle while under the influence, but extends to 'being in actual physical

control' while under the influence." *United States v. McFarland*, 369 F. Supp. 2d 54, 57 (D. Me. 2005), *aff'd*, 445 F.3d 29 (1st Cir. 2006). Thus, "[i]f 'being in actual physical control' is to mean anything, it must refer to something less than actual operation." *Id.*

"To determine whether the evidence is sufficient to sustain a conclusion of 'actual physical control,' a 'totality of circumstances' test is commonly applied." *Id.* at 60 (citing cases). Factors to consider when determining "actual physical control" include the following:

1) whether or not the vehicle's engine is running, or the ignition on;

2) where and in what position the person is found in the vehicle;

3) whether the person is awake or asleep;

4) where the vehicle's ignition key is located;

5) whether the vehicle's headlights are on;

6) whether the vehicle is located in the roadway or is legally parked.

*Atkinson v. State*, 627 A.2d 1019, 1027 (Md. 1993). Other factors include "whether the driver had voluntarily pulled off the road; time of day and weather conditions; if the heater or air conditioner was on; whether the windows were up or down; and any explanation of the circumstances advanced by the defense." *State v. Love*, 897 P.2d 626, 628 (Ariz. 1995). No one factor will be dispositive of whether the defendant was in "actual physical control" of the vehicle. *Atkinson*, 627 A.2d at 1028.

Here, Officer Usher found Defendant in his vehicle parked on BARC property by a gate or fence to a closed driveway, suggesting Defendant's actual physical control of the vehicle, as

> [t]he location of the vehicle can be a determinative factor in the inquiry because a person whose vehicle is parked illegally or stopped in the roadway is obligated by law to move the vehicle, and because of this obligation could more readily be deemed in "actual physical control" than a person lawfully parked on the shoulder or on his or her own property.

*Id.*

Further, "[a]ctual physical control of a vehicle does not solely depend on the location of the ignition key," *City of Fargo v. Theusch*, 462 N.W.2d 162, 163 (N.D. 1990), so "[t]he location of the keys is not dispositive." *Berns v. Comm'r of Pub. Safety*, 355 N.W.2d 493, 495 (Minn. Ct. App. 1984). Here, Officer Usher testified that the ignition key was on Defendant's lap, further suggesting Defendant's actual physical control of the vehicle. *See Kozak v. Comm'r of Pub. Safety*, 359 N.W.2d 625, 628 (Minn. Ct. App. 1984) ("The trial court properly ruled that [the defendant] had physical control of the vehicle where he was found asleep in the vehicle with the keys in his possession."); *accord State v. Kitchens*, 498 N.W.2d 649, 650-52 (S.D. 1993) (per curiam) (holding that trial court did not err in finding that defendant was in actual physical control of vehicle while sleeping behind steering wheel with keys in his pocket); *State v. Lawrence*, 849 S.W.2d 761, 765 (Tenn. 1993) (holding that defendant was in physical control of vehicle because defendant "was inside of the vehicle, behind the wheel, and had possession of the keys. He was alone in the truck and no one else was in the area."); *State v. Peterson*, 769 P.2d 1221, 1223-24 (Mont. 1989) (holding that defendant was in actual physical control of vehicle when he was found in driver's seat with keys to vehicle in his pocket).

Defendant asserts, however, that he was not in actual physical control because he was asleep in the driver's seat of his vehicle. *See Atkinson*, 627 A.2d at 1028 ("[A] person asleep on the back seat, under a blanket, might not be found in 'actual physical control,' even if the engine is running."). In the Court's view, however, "the intended purpose of an intoxicated driver statute is to keep alcohol-impaired drivers off the public roads, and that an intoxicated, albeit sleeping, vehicle occupant presents a danger to the public given the potential that he could awaken and resume driving in an instant." *McFarland*, 445 F.3d at 31 (citing cases). Thus,

11

"[a]n intoxicated individual who gets into his vehicle to sleep poses a threat of immediate operation of the vehicle at any time while still intoxicated." *Buck v. N.D. State Highway Comm'r*, 425 N.W.2d 370, 373 (N.D. 1988). "[T]he defendant could possibly wake up, find the keys in his pocket and set out on an inebriated journey at any moment." *Theusch*, 462 N.W.2d at 164.

Again, "physical control is meant to cover situations where an inebriated person is found in a parked vehicle under circumstances where the car, without too much difficulty, might again be started and become a source of danger to the operator, to others, or to property." *State v. Starfield*, 481 N.W.2d 834, 837 (Minn. 1992). For these reasons, Defendant remained a threat to the public while intoxicated and asleep in the driver's seat of his vehicle with its ignition key on his lap. The Court thus finds that Defendant was in actual physical control of his vehicle while asleep on BARC property on the morning of May 14, 2017. In short, the totality of the circumstances supports finding beyond a reasonable doubt that Defendant was intoxicated while in actual physical control of his motor vehicle on BARC property on May 14, 2017. The Court thus **DENIES** Defendant's motion for judgment of acquittal of the charge of DUI, in violation of 36 C.F.R. § 4.23(a)(1) (violation number 7213722).

## CONCLUSION

For the reasons stated above, Defendant's motion for judgment of acquittal under Fed. R. Crim. P. 29 is **DENIED**.

Date: January 18, 2018  /s/  
Thomas M. DiGirolamo  
United States Magistrate Judge